IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| EMERSON M.F. JOU, | ) | Civ. NO. 06-00151 SOM/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DISMISSING COMPLAINT |
| vs. | ) | |
| | ) | |
| HAWAII JUDICIAL SELECTION | ) | |
| COMMISSION; MELVIN I. CHIBA, | ) | |
| CHAIRPERSON; ROSEMARY T. | ) | |
| FAZIO, VICE CHAIR; LOIS M. | ) | |
| SUZAWA, SECRETARY; and SYDNEY | ) | |
| K. AYABE, MEMBER; STATE OF | ) | |
| HAWAII; DOES 1-25, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DISMISSING COMPLAINT

I.       INTRODUCTION.

        Plaintiff Emerson Jou claims that the state court
system is corrupt.  The corruption, he says, lies in the state's
system for renewing judges' terms of office.  Accordingly to Jou,
fear that any claims he files in state court will be unsuccessful
because of that retention system causes him to refrain from
filing lawsuits in state court.  His present federal suit alleges
that his federal constitutional rights are consequently being
violated, and he seeks prospective injunctive or declaratory
relief.

        Having been compelled to examine Jou's Complaint in
connection with motions Jou filed to disqualify this district
judge and the magistrate judge assigned to this case, this court

sua sponte questioned whether it had subject matter jurisdiction over Jou's claims.  The court issued an order to show cause ("OSC") why the case should not be dismissed for lack of both standing and ripeness.  The OSC gave Jou about a month in which to prepare a brief responding to this court's concerns.  After reviewing that brief and Defendants' submission on the subject, this court held a hearing on the matter.  Concluding that it lacks subject matter jurisdiction, this court dismisses the Complaint.

II.        STANDARD OF REVIEW.

        Standing and ripeness go to this court's subject matter jurisdiction.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (standing pertains to a federal court's subject matter jurisdiction); St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (ripeness pertains to a federal court's subject matter jurisdiction).  Questions of subject matter jurisdiction are addressed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

        Jou argues that this court should examine jurisdictional issues under Rule 12(b)(6).  The Ninth Circuit, however, has expressly rejected that argument.  See White, 227 F.3d at 1242 ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal

2

Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6).").  The
cases cited by Jou for the proposition that standing may be
examined under Rule 12(b)(6) do not stand for that proposition.
For example, Bland v. Fessler, 88 F.3d 729, 732 n.4 (9th Cir.
1996), cited by Jou, actually recognizes that jurisdictional
challenges are "amenable to dismissal only under Rule 12(b)(1) in
this circuit."  Spoklie v. Montana, 411 F.3d 1051, 1056-57 (9th
Cir. 2005), also cited by Jou, merely states that the district
court dismissed some claims on the ground that they were not ripe
and then dismissed certain remaining claims under Rule 12(b)(6).

        Under Rule 12(b)(1), this court may examine the
allegations of a complaint to determine whether they are
sufficient to confer subject matter jurisdiction on the court.
Alternatively, this court may examine the existence of subject
matter jurisdiction in fact.  Thornhill Publ'g Co. v. Gen. Tel. &
Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

        When the court examines the allegations of a complaint
to determine whether they are sufficient to confer subject matter
jurisdiction, all allegations of material fact are taken as true
and construed in the light most favorable to the nonmoving party.
Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d
1204, 1207 (9th Cir. 1996).  When the court examines the
existence of subject matter jurisdiction in fact, however, no
presumptive truthfulness attaches to the plaintiff's allegations,

and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. Thornhill, 594 F.2d at 733.

As the OSC seeks to examine the existence of facts supporting the court's subject matter jurisdiction, the court may accept and evaluate evidence to determine whether jurisdiction exists without converting the examination to one under Rule 56 of the Federal Rules of Civil Procedure. Americopters, LLC v. F.A.A., 441 F.3d 726, 732 (9th Cir. 2006) ("in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint--it may consider facts and need not assume the truthfulness of the complaint"); Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (in resolving a factual attack on jurisdiction, a district court may review evidence beyond the complaint without converting the motion into one for summary judgment); McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) ("when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"); Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings does not convert a Rule 12(b)(1) motion into a motion for summary judgment).

In responding to the OSC, Jou erroneously assumed that issues of subject matter jurisdiction fell under Rule 12(b)(6), and that this court could not consider matters outside the pleadings without converting the matter into one falling under Rule 56.  Before the hearing on the OSC, this court refocused Jou on Rule 12(b)(1) through this court's usual prehearing inclination process.  See Inclination, electronically filed at 5:42 p.m. on June 28, 2006, as Item No. 18 in the case docket, available through the court's Case Management/Electronic Case Filing ("CM/ECF") system accessible through the PACER system. Jou was expressly invited before the hearing to bring to the hearing evidence supporting subject matter jurisdiction.

Even if this court did proceed under Rule 12(b)(6), it could "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994) (documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss), overruled on other grounds as stated in Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

Jou also complains that the OSC delves into the merits of the case, making the Rule 56 procedure applicable.  However, the jurisdictional issues of Jou's standing and of ripeness are not so intertwined with the substantive issues raised by the Complaint "that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of [the] action."  Sun Valley Gasoline, Inc. v. Ernst Enter., Inc., 711 F.2d 138, 139 (9th Cir. 1983); accord Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005).  This court therefore proceeds with a factual examination of subject matter jurisdiction under Rule 12(b)(1), rather than under Rule 56.  The court is not, after all, deciding whether members of Defendant Hawaii Judicial Selection Commission or any state judge is corrupt or acting improperly.  Nor is the court deciding anything going to the validity of the system for deciding whether a judge should be retained.  The court is only examining whether Jou himself could possibly have been or could possibly be in imminent danger of being injured.

The court notes that, even if the court examines standing and ripeness under Rule 56, Jou has not pointed to any genuine issue of material fact going to the elements of standing or ripeness.  See Central Delta Water Agency v. U.S., 306 F.3d 938, 947 (9th Cir. 2002) ("at the summary judgment stage the plaintiffs need not establish that they in fact have standing,

but only that there is a genuine question of material fact as to the standing elements"). At the hearing, Jou also stated that he was entitled to a Rule 56(f) continuance. Although Rule 56(f) of the Federal Rules of Civil Procedure permits a district court to continue a summary judgment motion "upon a good faith showing by affidavit that the continuance is needed to preclude summary judgment," California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998), Jou is not entitled to an automatic Rule 56(f) continuance. A party requesting such a continuance bears the burden of (1) filing a timely application which specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the summary judgment motion. See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th Cir. 2004) (citation omitted); Campbell, 138 F.3d at 779. Jou has not even alleged what relevant information exists or identified what discovery is essential.

III.     FACTUAL BACKGROUND.

Defendants in this case are the Hawaii Judicial Selection Commission ("HJSC"), Melvin I. Chiba (the chair of the HJSC), Lois M. Suzawa (HJSC's secretary), two attorneys who are members of the HJSC (Rosemary T. Fazio and Sydney K. Ayabe), and the State of Hawaii. The HJSC is an entity created by Article

VI, Section 4, of the Constitution of the State of Hawaii.  <u>See</u>
Complaint ¶ 3 ("The JSC is an agency created by Article VI,
Section 4 of the Hawaii Constitution").

Among other things, the HJSC decides whether to retain
state judges and justices when they reach the end of the terms
for which they were appointed.  <u>See</u> <u>Haw. Const. art. VI</u>, § 3 ("At
least six months prior to the expiration of a justice's or
judge's term of office, every justice and judge shall petition
the judicial selection commission to be retained in office or
shall inform the commission of an intention to retire.  If the
judicial selection commission determines that the justice or
judge should be retained in office, the commission shall renew
the term of office of such justice or judge for the period
provided by this section or by law."); Rule 12 of the Rules of
the Judicial Selection Commission (governing the retention of
justices and judges).

The HJSC operates by "concurrence of the majority of
its voting members."  <u>Haw. Const. art. VI</u>, § 4.  Under Rule 5,
section three, of the Rules of the Judicial Selection Commission,
HJSC commissioners must "avoid conflicts of interest."  In
particular, that rule prohibits commissioners from participating
"in any retention proceeding regarding a judge or justice who has
a petition for retention pending before the commission . . . if

that commissioner has a substantive matter pending before that judge or justice."   Id.

There are nine members of the HJSC, serving staggered terms of no longer than six years.   Id.   ("There shall be a judicial selection commission that shall consist of nine members . . . . [E]lections and appointments to the commission shall be for staggered terms of six years each . . . [and] no member of the commission shall serve for more than six years on the commission.").   It is undisputed that the individual Defendants named in the Complaint are serving the following terms: Melvin I. Chiba, April 2, 2002, through April 1, 2008; Lois M. Suzawa, April 2, 2001, to April 1, 2007; Rosemary T. Fazio, April 2, 2003, to April 1, 2009; and Sydney K. Ayabe, April 2, 2001, to April 1, 2007.   See also Declaration of Susan n. DeGuzman (July 6, 2006) ¶ 6.

Jou says that he "desires to file suit" in state court against insurance companies, Complaint (March 14, 2006) ¶ 9, but has not done so because Defendants Fazio and Ayabe are attorneys who represent insurance companies or whose law firms represent those insurance companies, and because Defendant Suzawa is employed by Island Insurance Company.   For purposes of this motion, the court accepts as true Jou's representation that he is ready, willing, and able to file such suits in state court.   Jou alleges that state judges who are concerned about being retained

in their positions might attempt to curry favor with Defendants Fazio, Ayabe, and Suzawa by issuing rulings favorable to the insurance industry.   See id. ¶¶ 10, 13, 14, 15.   Jou says that he has demanded that Fazio, Ayabe, and Suzawa cease their participation on the HJSC, but that his "demand was ignored or refused by defendant MELVIN I. CHIBA, Chairperson of the JSC." Id. ¶ 12.

Jou, a physician practicing medicine on Oahu, says that "he has been forced by insurance company practices to either give up his claims for payment for medical services rendered . . . or file suit in the courts of the State of Hawaii."   Complaint ¶ 23.

The following State Circuit Court judges are serving the following terms in the First Circuit Court (Oahu), which is the state trial court in which Jou says he wants to file suit:

Karen S.S. Ahn - May 10, 2000, to May 9, 2010
Steven S. Alm - May 14, 2001, to May 13, 2011
Bert I. Ayabe - June 10, 2004, to June 9, 2014
Karen N. Blondin - May 11, 2002, to May 10, 2012
Patrick W. Border - April 8, 2004, to April 7, 2014
Derrick H.M. Chan - August 25, 2000, to August 24, 2010
Gary W.B. Chang - June 1, 1999, to May 31, 2009
Virginia L. Crandall - April 1, 2001, to March 31, 2011
Dexter D. Del Rosario - April 15, 2004, to April 14, 2014
Reynaldo D. Graulty - March 5, 1999, to March 4, 2009
Eden Elizabeth Hifo - April 30, 2003, to April 29, 2013
Colleen K. Hirai - May 6, 2004, to May 5, 2014
Randal K.O. Lee - April 22, 2005, to April 21, 2015
Victoria S. Marks - May 26, 2004, to May 25, 2014
Sabrina S. McKenna - June 30, 2005, to June 29, 2015
Rhonda A. Nishimura - June 20, 2003, to June 19, 2013
Richard K. Perkins - May 6, 2004, to May 5, 2014
Richard W. Pollack - May 10, 2000, to May 9, 2010
Karl K. Sakamoto - June 1, 2000, to May 31, 2010
Michael A. Town - April 30, 2003, to April 29, 2013

                Marcia J. Waldorf - June 18, 2002, to June 17, 2012
                Michael D. Wilson - May 10, 2000, to May 9, 2010
                Frances Q.F. Wong - May 11, 2002, to May 10, 2012

See DeGuzman Decl., Ex. A; see also 109 Hawai`i Reports (West

2006) (listing Judges and terms of office).  Only two First

Circuit Court judges have terms that expire during the period

that an HJSC member named in the Complaint is serving on the

HJSC.  Judge Gary W.B. Chang's term ends on May 31, 2009,[1] and

Judge Reynaldo D. Graulty's term ends on March 4, 2009.  By the

deadline for either Judge Chang or Judge Graulty to petition for

retention, Rosemary T. Fazio, whose term ends on April 1, 2009,

is the only individually named Defendant who will remain as a

member of the HJSC.  The terms of the other individuals named as

Defendants by Jou will have expired.[2]

        At the present time, neither Judge Chang nor Judge

Graulty appears likely to sit on any case Jou might file against

an insurance company in state court.  The court takes judicial

_____

        [1]At the hearing, Defendants' attorney indicated that Judge
Chang's term of office ends in March 2009, rather than May 2009.
This difference is immaterial for purposes of the OSC.

        [2]Among the judges and justices on the Intermediate Court of
Appeals and the Hawaii Supreme Court, only ICA Judge John S.W.
Lim faces the possibility of submitting a petition for retention
during Fazio's term on the HJSC.  Judge Lim's term as an ICA
judge expires on May 31, 2009.  See Declaration of Jaye M.
Atiburcio (July 7, 2006), Exs. 1 and 2.  The other state
appellate judges' terms expire after the end of the terms of the
HJSC members sued as individual Defendants.  Of course, it is
entirely speculative that, in any appeal filed by Jou, Judge Lim,
who is one of six ICA judges, will be assigned to the three-judge
panel that will decide the appeal.

notice of Jou's separate federal action against Judge Chang. That action is pending on appeal.  See Jou v. Chang, Civil No. 04-00718 DAE/BMK (on appeal to the Ninth Circuit, see Ninth Cir. No. 05-15207).  It therefore appears likely that Judge Chang would recuse himself from any case involving Jou.[3]  See Canon 3(E) of Hawaii's Code of Judicial Conduct ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned").  Nor is it likely that Judge Graulty would sit on any case filed by Jou, as he is not currently handling civil cases.  DeGuzman Decl. ¶¶ 11-12 and Ex. F attached thereto (Supplemental Order of Assignment (May 13, 2003).

Jou's attorney submitted his own declaration indicating that "John Nishimoto, Esq.[,] is seeking a position on the HJSC" and that his clients include medical insurance companies.  Even if counsel may serve as a witness in this regard, nothing in the record establishes whether Nishimoto will actually become a member of the HJSC.

---

[3]Jou says that Judge Chang is unlikely to recuse himself because he has not so recused himself from Jou's cases in the past.  At the hearing, however, Jou admitted that he has not asked Judge Chang to recuse himself since filing suit against Judge Chang.

IV.        ANALYSIS.

Article III, Section 2, of the Constitution confines federal courts to deciding cases or controversies.  To qualify for federal court adjudication, a plaintiff must show that an actual controversy exists at all stages of the case.  Arizonans for Official English v. Arizona, 520 U.S. 43, 63 (1997).  No case or controversy exists when a plaintiff lacks standing to make the claims asserted or when a claim is not ripe.

Standing is something that a plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing. To satisfy that burden, a plaintiff must demonstrate: 1) an injury in fact--an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical; 2) a causal relationship between the injury and the challenged conduct--an injury that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and 3) a likelihood, not mere speculation, that the injury will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996).

A plaintiff must also show that his claims are ripe, a matter determined by a two-pronged analysis.  That is, a

plaintiff must show both that the issues are appropriate issues for judicial decision and that the parties will suffer hardship if judicial consideration is withheld.  Municipality of Anchorage v. United States, 980 F.2d 1320, 1323 (9th Cir. 1992).

The Ninth Circuit has recognized that, in many cases, "ripeness coincides squarely with standing's injury in fact prong."  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  Whether the court applies a standing or a ripeness analysis, the court must determine that there is a "case or controversy" that presents issues that are "definite and concrete, not hypothetical or abstract."  Id. at 1139.  Jou does not allege a realistic or credible danger that he will sustain a direct injury.  Instead, the alleged danger is entirely imaginary, speculative, hypothetical, and abstract.  The Complaint therefore fails to present a case or controversy over which this court has jurisdiction.

In the OSC, this court asked Jou to specifically identify any claim that he was asserting beyond his prior restraint claim.  This was the court's attempt to make some sense out of the confusing and convoluted Complaint, which was far from the "short and plain statement of the claim showing that the pleader is entitled to relief" required by Rule 8(a)(2) of the Federal Rules of Civil Procedure.  All of Jou's claims have as a factual predicate the allegation that Jou is refraining from

filing lawsuits to recover money owed to him by insurance companies because state court judges, if they intend to seek retention as judges, might want to curry favor with Defendants Fazio, Ayabe, and Suzawa, and might therefore refuse to rule against Defendants Fazio, Ayabe, and Suzawa, and/or their insurance clients, law firms, or employers.  Jou calls this a prior restraint, saying that it chills and deters him from exercising his constitutional right to petition courts and impedes his constitutional right to free expression and advocacy. Jou says that he is also alleging Equal Protection and Due Process violations.

It turns out that no judge is up for retention during the period in which Defendants Chiba, Suzawa, and Ayabe will serve on the HJSC.  Suzawa and Ayabe have terms on the HJSC that end in April 2007.  Chiba has a term that ends in April 2008, and Fazio has a term that ends in April 2009.  Because Jou practices medicine on Oahu, and because he admitted at the hearing that he only wants to file claims in the Circuit Court for the First Circuit of the State of Hawaii (Oahu), this court examines the judges serving terms in the First Circuit Court.

Judges Chang and Graulty, whose present terms expire in 2009, might petition for retention during Defendant Fazio's term on the HJSC.  However, as noted earlier, neither judge is likely to sit on any case filed by Jou.  The court does not see how,

given these circumstances, Jou could have a realistic or credible threat to any right.  Jou has no factual basis for fearing that, if he files suit in state court, the lawsuit will be assigned to a judge whose upcoming retention application will cause him or her to attempt to curry favor with any individual Defendant or that individual Defendant's clients or firm.

Jou's claims against Defendants Chiba, the HJSC, and the State of Hawaii all arise from the participation by Suzawa, Fazio, and Ayabe on the HJSC.  Thus, if participation by Suzawa, Fazio, and Ayabe does not give rise to jurisdiction, the court is similarly without jurisdiction over claims against Chiba, the HJSC, and the State, even assuming solely for purposes of this motion that those parties are properly named as parties.

Jou argues that the jurisdictional issue this court should be examining is whether "a litigant must first file suit against an insurance company in a court where that insurance company decides whether or not to reappoint judges for ten year terms."  See Opposition to the OSC (June 15, 2006) at 11.  The allegation that an insurance company decides whether to retain a state judge is as fanciful and frivolous as an allegation that the Army, or IBM, or Microsoft makes that decision just because the attorney members of the HJSC represent those entities.  Jou's allegations go beyond specific clients and characterize an entire industry.  Jou is apparently contending that state judges will

16

favor any insurance company, even one not connected with Suzawa, Ayabe, or Fazio.  That is like saying that a judge will favor Macy's if an attorney who is a member of the HJSC represents Nordstrom's.  Jou assumes that all members of an industry have only common interests, that state judges know all the clients that an attorney member of the HJSC has, and that those clients never change.  These are breathtaking assumptions.  If Jou is alleging that a state judge will, in the future, favor insurance companies in state cases that have not been filed, that allegation does not give rise to a federal claim over which this court has jurisdiction.

Even if Jou had some basis for alleging a pro-insurance bias (a basis that is conspicuously absent from the record before this court), his allegation of harm, besides ignoring the practical impact of the terms of the First Circuit judges and of the HJSC members, ignores the presence of HJSC members other than the named Defendants.  Those other members outnumber the named Defendants and may approve or reject a sitting state judge's application for retention over the objection of the named individual Defendants.  It is therefore difficult to see how Jou's concern is anything more than mere speculation.

Jou cannot proceed in the absence of a "credible threat" to his First Amendment rights.  See LSO, Ltd. v. Stroh, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (it is "sufficient for

17

standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff" (internal quotation omitted)).  Jou offers no credible threat that, if he filed a lawsuit in state court, it would be assigned to a judge who would attempt to curry favor with Defendants Suzawa, Fazio, and Ayabe.  Their membership on the HJSC is not causing Jou's so-called injuries.  Instead, Jou's injuries are entirely self-inflicted.  He is speculating that a state judge might attempt to curry favor with members of the HJSC whose membership on the HJSC must end before the deadline for seeking retention.

In Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289 (1979), the court examined a challenge to a statute that was allegedly causing a plaintiff to refrain from exercising constitutional rights.  Reviewing the jurisdictional issue, the Court said:

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.  But persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs."

Id. at 298 (internal quotations and citations omitted) (emphasis added).  Accord Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1096 (9th Cir. 2003) ("[W]e hold that CPLC does not have standing to argue that the definition of 'independent expenditure' is unconstitutionally vague as applied to its candidate advocacy.  CPLC faces no credible threat of prosecution for its candidate advocacy").[4]

Jou's fear is built on layers of speculation.  First, he speculates that his case will be assigned to a judge seeking retention while Suzawa, Fazio, and Ayabe serve on the HJSC.

---

[4] NASD Dispute Resolution, Inc. v. Judicial Council of Cal., 232 F. Supp. 2d 1055 (N.D. Cal. 2002), cited by Jou, is distinguishable.  In NASD, the court found that the plaintiffs had standing to challenge a law enacted by the California legislature.  This law required the plaintiffs, national security exchanges providing arbitration services to their members, to comply with certain ethical standards in conducting arbitrations. Failure to follow those standards could have been grounds to vacate arbitration awards.  The plaintiffs alleged that these standards conflicted with federal standards governing an arbitrator's conduct.  The defendants, who were charged with creating rules and suggesting reforms to ensure the effective administration of justice in California, moved to dismiss, arguing that the claims were speculative because the standards had not yet been enforced.  The district court, however, found an actual injury.  If the plaintiffs complied with California law, they would incur substantial record-keeping costs, create conflicts with their own rules, and potentially lose the services of their arbitrators.  Alternatively, the plaintiffs could ignore the California standard and risk engaging in voidable arbitrations, or they could simply suspend arbitrations altogether, which is what they had been doing.  Id. at 1062.  By contrast, Jou is not faced with a choice based on the existence of a law.  Instead, he has chosen not to file suit in state court because he believes that he cannot receive a fair trial in state court.  His mere belief is not a credible threat of injury.

Second, he speculates that the retention application provides a basis to seek recusal.  That is, Jou speculates that he would state a legitimate basis for recusal, even if, as required by HJSC rules, Suzawa, Ayabe, and Fazio did not participate in retention decisions concerning judges before whom they had pending cases.  Third, he speculates that his recusal motion is denied.  Fourth, he speculates that the denial is wrongful. Fifth, he speculates that he then loses his case.  Sixth, he speculates that he would have prevailed but for the failure to recuse.  That is, he speculates that he had a valid case, properly supported by evidence and law, and that the judge improperly ruled against him to make Suzawa, Ayabe, or Fazio happy.  Jou does not indicate how the judge would make sure that Suzawa, Ayabe, or Fazio would learn of the ruling they allegedly would like.  State trial court decisions are not published, and Jou does not indicate that the claims he wants to file would be reported in local newspapers.  Seventh, he speculates that the state court system affords him no recourse.  That is, he speculates that any appeal would be denied by Hawaii's appellate courts, and that any attempt to pursue a judicial misconduct complaint would fall on deaf ears.  Like a multi-layered cake that threatens to collapse under its own weight, Jou's Complaint

20

consists of a precarious pile of speculative allegations.  From

the very first layer, Jou's fear lacks credibility.[5]

In a tacit acknowledgment of his layers of speculation,

Jou changes course at page 11 of his response to the OSC,

_____

[5]Jou argues that, under Thompson v. Borg, 74 F.3d 1571, 1574
(9th Cir. 1996), he need not file suit in state court because he
will be "abused" there by a prejudicial structural error.
Thompson does not stand for that proposition and is inapplicable
to the issues in this case.  Thompson involved a state court
prisoner who asked the federal courts for habeas relief.  In that
context, the Ninth Circuit examined whether a claimed
constitutional error involved a structural error to determine
whether the alleged error was harmless.  Jou misunderstands the
concept of structural error.

Jou's citation of Sims v. Rowland, 414 F.3d 1148, 1153 (9th
Cir. 2005), cert. denied, 126 S. Ct. 809, similarly misses the
mark.  Sims also involved a state prisoner's claim of
constitutional error in his criminal trial.  Although Sims stated
that a trial before a biased judge is an example of a
constitutional error rendering a trial fundamentally unfair, that
statement does not apply to any issue addressed by this order.
Even if Jou would be prejudiced by having to litigate a state
lawsuit before a biased judge, Jou lacks any credible threat of
being assigned to a biased judge. Instead, the alleged bias
arises from layers upon layers of speculation.

Jou also relies heavily on Tumey v. Ohio, 273 U.S. 510, 531-
34 (1927), as saying that he "need not take the hollow step of
filing suit in an impartial [sic] court, to gain standing."
Opposition (June 15, 2006) at 17.  Tumey was a Prohibition Era
case in which a defendant convicted of an alcohol-related crime
challenged the conviction on the ground that he had been tried by
a mayor who stood to be paid out of the proceeds of the fine
assessed against the defendant.  At the hearing, Jou argued that
the state judges have pecuniary interests in their reappointment.
Jou seems to believe that, because state judges are paid by the
State, his Due Process rights are being violated under Tumey.
Judges' salaries differ greatly from compensation from fines
imposed by adjudicators.  Hawaii's state judges' salaries do not
turn on the content of their rulings, as the mayor's compensation
did in Tumey.

focusing for the first time on the assignment judge in the state court system.  Jou says that "none of the Court's allegations asserted that defendants would not use the same assignment judge who assigns cases to the same judges; who always rule in favor of insurance companies, and who come up for retention before defendants."  Leaving aside the absence of any "allegations" by this court, the court finds the reference to the assignment judge unavailing.  Jou's allegation concerning the assignment judge remains based on the hypothetical existence of judges who come up for retention before Defendants.  There are, as noted earlier, only two trial court judges eligible to be retained in or before 2009.  The other judges do not come up for retention for four years or more, by which time any claim filed by Jou today would likely have completed its journey through the state circuit court.  Those two judges do not appear to be judges who will preside over any case Jou may file.

At the hearing, Jou's counsel said Jou wanted to be assigned to a state judge who was not seeking to be retained.  It is entirely possible that, if Jou files suit in state court, his case will be assigned to such a judge.  This court is not suggesting that Jou has a right to such an assignment.  Nor is the court suggesting that Jou has a right to know whether a judge intends to seek retention years in advance.  Of course, Jou may inquire, but he is not wronged if he receives no response, as the

judge may not have decided years in advance whether to seek
retention or not.  This court is only saying here that Jou
presently has no credible threat of any injury.

Jou's argument that dismissal of this case would
violate his rights under the Due Process Clause is unavailing.
Jou's argument ignores the notice given to him via the OSC and
the opportunity the court gave him to address the jurisdictional
issues in writing and to present argument at a hearing.  These
opportunities provided ample due process.  See Sparling v.
Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988) ("A trial
court may act on its own initiative to note the inadequacy of a
complaint and dismiss it for failure to state a claim.  The court
must give notice of its intention to dismiss and give the
plaintiff some opportunity to respond unless the plaintiffs
cannot possibly win relief." (internal citations and quotations
omitted)); Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir. 1981) ("A
trial court may act on its own initiative to note the inadequacy
of a complaint and dismiss it for failure to state a claim, but
the court must give notice of its sua sponte intention to
invoke." (citation omitted)).

Jou objects to the timing of the OSC, arguing that, in
connection with the motions to recuse judges he had filed, he had
informed the court that his attorney would be out of town from
May 11, to May 22, 2006.  Jou says that the court should have

waited to issue the OSC until after May 22, rather than issuing it on May 12, 2006.  The OSC was issued as a result of the court's review of the Complaint in conjunction with Jou's May 8, 2006, motions to recuse judges.  In filing the OSC on May 12, the court set the hearing on the OSC for July 3, 2006, telling Jou that, if he opposed the OSC, he could file written objections no later than June 15, 2006, which was more than three weeks after Jou's attorney had returned to Honolulu.  This period was longer than the minimum period allotted by local court rule for opposition memoranda filed in response to adversaries' motions. Under Local Rule 7.2(a), a motion may be heard 28 days from the filing of the motion.  Oppositions to motions are due no later than 18 days before a hearing.  <u>See</u> Local Rule 7.4.  Jou's attorney had more than 10 days after returning from his travels to draft the opposition to the OSC and had more than 28 days from returning to Honolulu to prepare for the OSC hearing.  The timing of the OSC was therefore not somehow more disadvantageous to Jou than a defense motion might have been.  Moreover, Jou never sought a continuance of the briefing deadline or the hearing.

Jou similarly objects to this court's "late evening fax" of its usual prehearing inclination.  Even assuming an event occurring around 6 p.m. occurs in the "late evening," Jou's objection is baseless.  Jou had no entitlement to receive any inclination.  Nor was he entitled to have this court fax the

inclination to him.  The normal distribution of the Inclination is through the court's CM/ECF system.  The inclination was only faxed to Jou's attorney because he is not a registered user of this court's CM/ECF system.  It was transmitted on a Wednesday, and the hearing was the following Monday.

The court reads with great confusion Jou's argument that the procedure followed by this court denies him a chance to file a "reply memorandum."  This court's OSC initiated consideration of the jurisdictional issue.  Jou seems to be looking at the OSC as having the function of a motion to dismiss. Jou's response to the OSC then functioned as an opposition to the purported motion to dismiss, and Defendants' memorandum addressing Jou's opposition functioned as a reply memorandum. The court cannot see how Jou had a right to file a reply memorandum of his own.  If the jurisdictional issue had been raised by a motion to dismiss filed by Defendants, Jou's only written submission would have been an opposition memorandum.  Jou is not somehow entitled to file a second memorandum just because the issue was raised in an OSC.  If anyone has suffered abbreviated briefing, it is Defendants, who did not have a chance to file a full-dress memorandum in support of a motion to dismiss.

Moreover, it is settled law that a court has a right to raise a jurisdictional issue on its own.  See Franklin v. State

of Oregon, State Welfare Div., 662 F.2d 1337, 1342 (9th Cir. 1981) ("A judge . . . may dismiss an action sua sponte for lack of jurisdiction.").[6]  Indeed, this court is required to <u>sua sponte</u> examine jurisdictional issues.  B.C. v. Plumas Unified School Dist., 192 F.3d 1260, 1264 (9th Cir. 1999) ("federal courts are required sua sponte to examine jurisdictional issues").

Finally, Jou misapprehends the nature of a jurisdictional inquiry when he complains that the OSC "remove[s] the safeguard of impartiality which is embodied in the guarantee of a fair trial."  Jurisdiction is an issue that is typically determined before trial and usually has nothing to do with a "fair trial."  An inquiry into jurisdiction is not a sign of impermissible bias by a judge.  Appellate courts frequently raise jurisdictional issues <u>sua sponte</u> in a context having nothing to do with a fair trial.  Jou is confusing decisions on the merits with decisions on jurisdiction.  While those issues admittedly

---

[6]At the hearing, Jou, having seen a reference to <u>Franklin</u> in the court's prehearing inclination, argued that <u>Franklin</u> had been reversed in part.  However, the case to which Jou was referring, Franklin v. Murphy, 745 F.2d 1221 (1984), involved the appeal of the remanded case subsequent to the Ninth Circuit's decision in 662 F.2d 1337.  That subsequent appeal did not overrule the Ninth Circuit's earlier statement that a district court may dismiss an action <u>sua sponte</u> when it lacks jurisdiction.  See 745 F.2d at 1227 n.6 ("A paid complaint that is 'obviously frivolous' does not confer federal subject matter jurisdiction and may be dismissed sua sponte before service of process." (internal citation omitted)).

overlap on occasion, no trial is required in the present case to determine that Jou lacks standing and that his claims are not ripe.  Distinguishing between decisions on the merits and decisions on jurisdiction, the Ninth Circuit has clearly approved a court's sua sponte review of jurisdictional issues, and this court has followed a procedure consistent with that approval. See Franklin, 662 F.2d at 1341-42.

V.      CONCLUSION.

        The Complaint is dismissed.  Jou is given leave to file a First Amended Complaint no later than July 24, 2006.  In any such Amended Complaint, Jou should clearly identify changes to the original Complaint by underlining or using boldface for any additions to the Complaint and by typographically striking through any deletions to the Complaint.  The Amended Complaint shall also be filed consistent with Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th cir. 1997) ("a plaintiff waives all claims alleged in a dismissed complaint which are not realleged in an amended complaint" because the dismissed complaint becomes a nullity upon the filing of an amended complaint).

If Jou fails to file an Amended Complaint by July 24, 2006, the Clerk of Court shall automatically enter judgment in favor of Defendants and close this case on or after July 25, 2006.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, July 14, 2006.



Susan Oki Mollway
United States District Judge

Jou v. Hawaii Judicial Selection Commission, Civil No. 06-00151 SOM/KSC; ORDER DISMISSING COMPLAINT

28