IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

EMERSON M.F. JOU,                  )    Civ. No. 06-00151 SOM/KSC
                                   )
            Plaintiff,             )
                                   )
       vs.                         )
                                   )    ORDER DISMISSING ACTION
HAWAII JUDICIAL SELECTION          )
COMMISSION; MELVIN I. CHIBA,       )
CHAIRPERSON; ROSEMARY T.           )
FAZIO, VICE CHAIR; LOIS M.         )
SUZAWA, SECRETARY; SYDNEY K.       )
AYABE, MEMBER; STATE OF            )
HAWAII; DOES 1-25,                 )
                                   )
            Defendants.            )
_____    )

ORDER DISMISSING ACTION

I.        INTRODUCTION AND BACKGROUND.

          On July 14, 2006, this court filed its Order Dismissing

Complaint, in which the court dismissed the original complaint

filed by Plaintiff Emerson M.F. Jou ("Jou") against Defendants

Hawaii Judicial Selection Commission ("HJSC"), Melvin I. Chiba,

Rosemary T. Fazio, Lois M. Suzawa, Sydney K. Ayabe, and the State

of Hawaii (collectively, "Defendants").  In the original

complaint, Jou claimed that he had been refraining from filing

lawsuits against insurance companies in Hawaii's state courts

because the state's allegedly corrupt system for retaining judges

causes state court judges to favor insurance companies.  After

this court concluded that the original complaint did not allege a

realistic or credible danger that Jou would sustain a direct

injury and that "the alleged danger is entirely imaginary,

speculative, hypothetical, and abstract," this court dismissed the complaint and granted Jou leave to file a First Amended Complaint.

On July 24, 2006, Jou filed the First Amended Complaint ("FAC") against Defendants, broadening the allegations contained in the original complaint. As in the original complaint, the FAC asserts claims under: (1) the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; (2) the Petition and Expression Clauses of the First Amendment; (3) the Takings doctrine of the Fifth Amendment; and (4) 42 U.S.C. §§ 1983 and 1985(3). Jou also realleges that he is ready, willing, and able to file lawsuits against insurance companies in state court, but has not done so because those insurance companies are "the employers or clients of defendants Ayabe, Fazio, and Suzawa" and because state court judges will consequently rule in favor of those insurance companies. Jou now adds allegations that <u>future</u> HJSC members will undoubtedly have similar relationships with insurance companies, thereby causing <u>future</u> state court judges to be biased and rule in favor of insurance companies. In other words, Jou now challenges the "structural bias of all state judges," rather than the individual bias of any particular state judge.

On August 7, 2006, Defendants filed a motion to dismiss the FAC. Defendants claim that the FAC, like the original

2

complaint, is based on mere speculation and does not allege a
sufficient injury for standing purposes.  Thus, Defendants argue,
this court lacks jurisdiction over the FAC.  In response, Jou
argues that he has standing to challenge "the state's litigant-
directed policy of judicial selection," as he now challenges "the
structural bias of all state judges."  Because the FAC does not
cure Jou's lack of standing, the court grants Defendants' motion
to dismiss.

II.      LEGAL STANDARD.

        The court incorporates by reference the legal standard
in its Order Dismissing Complaint filed on July 14, 2006.

III.     ANALYSIS.

        Defendants argue that the FAC "does not correct the
jurisdictional defects of standing and ripeness that were
identified and addressed by this Court in its July 14, 2006
Order."  Motion at 5.  Defendants contend, "Plaintiff continues
to claim that a state judge will, in the future, favor insurance
companies in state court cases that have not been filed, even
though this Court has already told him that if that is the basis
of his allegations it does not give rise to federal court
jurisdiction."  Motion at 5.  They assert that the FAC, like the
original complaint, is based on "mere speculation and does not
constitute injury for standing purpose[s]."  Motion at 7.
Pointing to his new claim challenging "the structural bias of all

3

state judges," <u>see</u> Opp. at 1-2, Jou says his interest in pursuing
causes of action against insurance companies in state court is
"sufficiently concrete to confer standing." Opp. at 5. Because
Jou lacks standing to bring the claims asserted in the FAC, the
court dismisses this action.

As discussed in the Order Dismissing Complaint, to
establish standing, a plaintiff must demonstrate:  (1) an injury
in fact--an invasion of a legally protected interest that is
concrete and particularized, as well as actual or imminent, not
conjectural or hypothetical; (2) a causal relationship between
the injury and the challenged conduct--an injury that is fairly
traceable to the challenged action of the defendant, and not the
result of the independent action of some third party not before
the court; and (3) a likelihood, not mere speculation, that the
injury will be redressed by a favorable decision. Order at 13
(citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61
(1992); <u>San Diego County Gun Rights Comm. v. Reno</u>, 98 F.3d 1121,
1126 (9th Cir. 1996)).  A plaintiff who alleges violations of
rights secured by the First Amendment cannot proceed in the
absence of a "credible threat" to his First Amendment rights.
Order at 17-18 (citing <u>LSO, Ltd. v. Stroh</u>, 205 F.3d 1146, 1154-55
(9th Cir. 2000)).

In the Order Dismissing Complaint, this court concluded
that the original complaint did "not allege a realistic or

4

credible danger that [Jou] will sustain a direct injury." Order at 14. Noting that "the alleged danger is entirely imaginary, speculative, hypothetical, and abstract," this court concluded that the original complaint "fails to present a case or controversy over which this court has jurisdiction." Order at 14. The court stated, "If Jou is alleging that a state judge will, in the future, favor insurance companies in state cases that have not been filed, that allegation does not give rise to a federal claim over which this court has jurisdiction." Order at 17. The FAC, like the original complaint, is based on that very allegation.

        In the FAC, Jou reasserts claims made in the original complaint, but broadens those claims to allege that all current and future state judges will favor insurance companies because those companies are and will forever be employers or clients of HJSC members. The FAC is thus built on the same layers of speculation as the original complaint. See Order at 19-21. However, Jou's efforts to broaden his claims add even more layers of speculation to Jou's allegations. For example, Jou now speculates that (1) future HJSC members (2) will be employed by or represent insurance companies (3) that Jou intends to sue. He also speculates that (4) future state judges (5) will curry favor with those future HJSC members (6) by disregarding their judicial duties and, instead, favoring insurance companies in every case

before them.  Under Jou's theory, even judges who have no intention of seeking retention will be biased in favor of insurance companies.  As the court said in connection with the original complaint, "Jou's allegations go beyond specific clients and characterize an entire industry [by] contending that state judges will favor any insurance company, even one not connected with Suzawa, Ayabe, or Fazio."  <u>See</u> Order at 16-17.

Jou's allegations are based in large part on what he claims are the "fiduciary duties of undivided loyalty" that current and future HJSC members owe or will owe to insurance companies.  Because Jou does not define those duties, it remains unclear to this court how voting for or against retention of a state judge would breach any such duty.  Even assuming that HJSC members do owe fiduciary duties to insurance companies and that voting for or against retention of a judge could breach those duties, Jou does not explain why every insurance company would unanimously urge their employees or counsel to vote against retaining a judge who rules, even once, against an insurance company.  After all, even assuming insurance companies are concerned with the retention of judges, insurance companies compete for business and may disagree on whether any given judge should be retained, as a judge may sometimes rule for and sometimes against an insurance company, or may have to resolve

disputes among insurers.  The future injury that Jou now complains about is speculative at best.

Jou argues that he has standing in this case because he is alleging "broad based structural bias."  For support, he cites to <u>Boddie v. Connecticut</u>, 401 U.S. 371 (1971), <u>Ward v. Village of Monroeville, Ohio</u>, 409 U.S. 57 (1972), and <u>Gibson v. Berryhill</u>, 411 U.S. 564 (1973).  All three cases are distinguishable.

In <u>Boddie</u>, 401 U.S. at 372, welfare recipients challenged a Connecticut statute that required payment of a court fee to bring a divorce action.  The welfare recipients were unable to pay the court fee and were therefore "unsuccessful in their attempt to bring their divorce actions in the Connecticut courts, simply by reason of their indigency."  <u>Id.</u> at 373.  The recipients' subsequent efforts in state court to obtain a judicial waiver of the fee requirement "were to no avail."  <u>Id.</u>  Thereafter, the recipients brought suit in federal court, arguing that the statute requiring payment of court fees "restrict[ed] their access to the courts in their effort to bring an action for divorce."  <u>Id.</u> at 372.  The federal district court upheld the statute, but the Supreme Court reversed, concluding that "given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability

to pay, access to its courts to individuals who seek judicial dissolution of their marriage." Id. at 373.  Unlike the present case, standing was not at issue in Boddie because the recipients actually attempted to bring their actions in state court.

In Ward, 409 U.S. at 82, the mayor of Monroeville, Ohio, who was authorized by statute to sit as a judge in certain traffic cases, convicted Clarence Ward ("Ward") of two traffic offenses and fined him $50 for each offense.  On appeal, Ward argued that the mayor was not an impartial judicial officer because the mayor was also responsible for generating municipal revenue, which was derived in part from the fines imposed by him in court.  In other words, Ward argued, the mayor had a personal interest in ruling against Ward.  The Ohio Supreme Court affirmed Ward's conviction, but the United States Supreme Court reversed, noting that the mayor's dual roles made him "partisan to maintain the high level of contribution from the mayor's court."  Id. at 83.  The mayor's personal interest in Ward's case prevented the mayor from being a neutral and detached judge.  Jou is not presently in any analogous danger of suffering any injury from a judge with a personal interest, as Jou has not yet filed the case he says he is ready to file.

In Gibson, 411 U.S. at 567, the Alabama Optometric Association filed charges with the Alabama Board of Optometry ("Board") against optometrists who were employed by Lee Optical

Co.   The charges alleged that Alabama law forbade optometrists from practicing optometry while employed by a corporation, such as Lee Optical Co.  Id. at 568.   The optometrists thereafter filed suit in federal court against the Board, claiming that the Board members should be disqualified from hearing the charges because the members had a personal interest in ruling against them.   That personal interest arose from the fact that, if the Board members revoked the optometrists' licenses, the Board members, who themselves practiced optometry, would "fall heir" to the optometrists' clients.   The district court concluded that "success in the Board's efforts [to revoke the optometrists' licenses] would possibly redound to the personal benefit of members of the Board, sufficiently so that . . . the Board was constitutionally disqualified from hearing the charges filed against the [optometrists]."  Id.  The Supreme Court agreed, noting that "those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes."  Id. at 579.

Unlike the present case, neither standing nor ripeness was at issue in Ward and Gibson.  In both cases, Ward and the optometrists were actually charged before the mayor and the Board.   Thus, Ward and the optometrists stood to be injured by the mayor's and the Board's bias.   Ward and the optometrists therefore had standing to claim that the mayor and the Board, respectively, should be disqualified from hearing their cases. By contrast, Jou has not been injured by any state judge and

cannot claim a credible threat of injury without initiating an action in state court that is assigned to a judge subject to HJSC decisions.

The allegations in the FAC, like those in the original complaint, offer no credible threat that Jou is in danger of a direct injury.  <u>See</u> Order at 18.  The alleged dangers remain imaginary, speculative, hypothetical, and abstract.  <u>See</u> Order at 14.  Although, on a different record, Jou may have standing to bring these claims, the FAC does not cure Jou's lack of standing as detailed in the Order Dismissing Complaint.  Therefore, the court lacks jurisdiction to hear this case and dismisses the action.

IV.      <u>CONCLUSION.</u>

The court grants Defendants' motion to dismiss.  The Clerk of Court is directed to enter judgment for Defendants and to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 12, 2006.


Susan Oki Mollway
United States District Judge


<u>Jou v. Hawaii Judicial Selection Commission, et al.</u>, Civ. No. 06-00151 SOM/KSC; ORDER DISMISSING ACTION.