```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAII

EMERSON M.F. JOU,                )   Civ. No. 06-00151 SOM/KSC
                                 )
               Plaintiff,        )
                                 )
     vs.                         )
                                 )   ORDER DENYING PLAINTIFF'S
HAWAII JUDICIAL SELECTION        )   MOTION FOR RECONSIDERATION
COMMISSION; MELVIN I. CHIBA,     )
CHAIRPERSON; ROSEMARY T.         )
FAZIO, VICE CHAIR; LOIS M.       )
SUZAWA, SECRETARY; SYDNEY K.     )
AYABE, MEMBER; STATE OF          )
HAWAII; DOES 1-25,               )
                                 )
               Defendants.       )
_____)
```

ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

I.      INTRODUCTION AND BACKGROUND.

Plaintiff Emerson M.F. Jou ("Jou") requests reconsideration of this court's September 12, 2006, order dismissing his action ("Order"). In the Order, the court dismissed Jou's First Amended Complaint ("FAC") against Defendants Hawaii Judicial Selection Commission ("HJSC"), Melvin I. Chiba, Rosemary T. Fazio, Lois M. Suzawa, Sydney K. Ayabe, and the State of Hawaii (collectively, "Defendants") for lack of standing. Jou seeks reconsideration on the ground that the court committed manifest errors of law or fact by interpreting Jou's claims as "individual bias" claims rather than "structural bias" claims and by therefore applying the wrong legal standard. The court disagrees and denies Jou's motion.

II.     LEGAL STANDARD.

A successful motion for reconsideration must accomplish two goals. First, it must demonstrate some reason that the court should reconsider its prior decision. White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006). Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Id. Courts have established three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. Id. The District of Hawaii has implemented these standards in Local Rule 60.1. Id.

III.    ANALYSIS.

A.   The Court Did Not Misinterpret Jou's Claims.

Jou argues that the court committed a manifest error of fact by interpreting the claims in the FAC to be claims for "individual bias of future judges" rather than claims for "structural bias." Motion at 1-2. Jou contends, "A fair reading of the [FAC] makes clear that the claims are not based on actual bias, but on structural bias or infirmities within the Hawaii judiciary." Motion at 2. Jou asserts that "the FAC grounds its structural bias claims precisely on the method that the pool of state judges is selected by the HJSC . . . and not, as the court assumed, merely a 'corrupt system for retaining judges [that]

2

causes state court judges to favor insurance companies.'" Motion at 1 (quoting Order at 1). Jou is incorrect.

In the Order, the court began by summarizing the claims presented in the original complaint. The court stated, "In the original complaint, Jou claimed that he had been refraining from filing lawsuits against insurance companies in Hawaii's state courts because the state's allegedly corrupt system for retaining judges causes state court judges to favor insurance companies." Order at 1. Contrary to Jou's assertion, the court did not state that the claims in the FAC were based on the "corrupt system of retaining judges." That statement referred only to claims in the original complaint.

In addition to summarizing the claims in the original complaint, the court noted that, in the FAC, "Jou now challenges the 'structural bias of all state judges,' rather than the individual bias of any particular state judge." Order at 2; see also Order at 3-4 (noting that the FAC involves a "new claim challenging 'the structural bias of all state judges'"); Order at 7 (discussing Jou's claim for "'broad based structural bias'"). Clearly, the court interpreted the FAC as asserting structural bias claims, not individual bias claims. The court therefore rejects Jou's contention that the Order somehow misinterpreted the claims in the FAC.

3

       B.   <u>The Court Did Not Err in its Standing Analysis.</u>

Jou argues that, because the court misinterpreted his claims, the court applied the wrong test in analyzing his standing. Jou contends that the court's standing analysis "erred in avoiding the inquiry required by the Ninth Circuit in structural bias cases," which Jou says is "whether the official motive here is 'strong' so that it 'reasonably warrants fear of partisan influence on the judgment.'" Motion at 6 (ellipses points and emphasis omitted). Jou argues that, had the court properly analyzed his claims as structural bias claims, the court's standing analysis would have included a discussion of the following facts: (1) "the HJSC is the exclusive state agency for the reappointment of judges and justices"; (2) "the HJSC pre-selects a pool of applicants for the state bench"; (3) "HJSC decision-making [requires] a quorum of 5 of nine votes and simple majority voting"; (4) "the HJSC has authorized litigants with active cases pending in the state courts to be represented as voting members of the HJSC, by their attorneys or by their employees or officers"; (5) "the structural element of the HJSC is not being changed, or amended, by the state"; and (6) "as a result of the structural bias in the form of a cadre of insurers on the HJSC, [Jou] cannot file suits in the state courts against the insurers until this biasing barrier is removed." Motion

at 2-4. Jou argues that the court's failure to address these facts warrants reconsideration. The court disagrees.

Jou relies on <u>Alpha Epsilon Phi Tau Chapter Housing Association v. City of Berkeley</u>, 114 F.3d 840 (9th Cir. 1997) ("<u>Alpha Epsilon</u>"), for his contention that the court's standing analysis should have discussed "whether the official motive here is 'strong' so that it 'reasonably warrants fear of partisan influence on the judgment.'"[1]  However, <u>Alpha Epsilon</u> did not discuss standing and is therefore inapposite to this court's analysis of Jou's standing.

<u>Alpha Epsilon</u>, 114 F.3d at 842, concerned the Berkeley Rent Stabilization Board ("the Board"), which has two responsibilities: (1) in its executive capacity, the Board controls rents that landlords may charge and finances itself by "charging landlords annual registration fees"; and (2) in its "quasi-judicial capacity," the Board reviews appeals from hearing examiners' decisions on landlord-tenant rent disputes. "If the Board determines that a rental unit is subject to rent control, the landlord must pay an annual registration fee." <u>Id.</u>

Alpha Epsilon Phi ("AEP") operated a rooming house at the University of California, Berkeley. <u>Id.</u> at 843. In 1994, one of AEP's tenants filed a petition with the Board, alleging

---

[1] Jou also cites to <u>Ward v. Village of Monroeville, Ohio</u>, 409 U.S. 57 (1972). As the court discussed in the Order, <u>Ward</u> is distinguishable from the present case.

5

that AEP was charging him excessive rents.  Id.  The hearing examiner ruled in favor of the tenant, and the Board affirmed, ordering AEP to pay an annual registration fee.  Id.  AEP then filed suit in federal court, alleging that "the Board's determination violated due process because it was not an impartial adjudicator," as it financed itself with the registration fees it ordered landlords to pay.  Id.  The district court held that "the Board had no interest that could have violated due process."  Id.

On appeal, the Ninth Circuit described "the two main categories of due process challenges based on structural bias":

> First, due process is violated if a decisionmaker has a "direct, personal, substantial pecuniary interest" in the proceedings.  Second, even if the decisionmaker does not stand to gain personally, due process may also be offended where the decisionmaker, because of his institutional responsibilities, would have "so strong a motive" to rule in a way that would aid the institution.

Id. at 844 (internal citation omitted).  After concluding that AEP's challenge fell under "the second, institutional aspect of due process analysis," the court stated, "The issue, in the end, comes down to a judgment whether the official motive here is 'strong,' so that it 'reasonably warrants fear of partisan influence on the judgment.'"  Id. at 845-47.  The Ninth Circuit held that "the present situation does not cross this threshold," as "the amount of the budget at stake in any year . . . is rather

6

small" and because the Board may "seek funding from . . . other sources." Id. at 847. The court concluded that, because "the Board's motive to adjudicate landlords . . . is not 'strong,'" the Board's review of landlord-tenant disputes "does not offend the applicable due process standard." Id.

Notably, Alpha Epsilon, 114 F.3d at 842-48, did not discuss AEP's standing. AEP's standing to challenge the Board's alleged structural bias was not at issue simply because AEP was brought before the Board and the Board ruled against it. AEP therefore stood to be, and was in fact, injured by the Board for standing purposes. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (requiring a plaintiff to demonstrate an "injury in fact" to establish standing). The Ninth Circuit's analysis concerned only the merits of AEP's structural bias claim.

Jou argues that this court erred by not utilizing the test for structural bias set forth in Alpha Epsilon--namely, "whether the official motive here is 'strong' so that it 'reasonably warrants fear of partisan influence on the judgment.'" Motion at 6. That test, however, goes to the merits of a structural bias claim, which was not an issue in the Order. The court dismissed the FAC solely on the ground that the court lacked jurisdiction over Jou's claims because he lacked standing to bring them. The court had no jurisdiction to reach the merits

7

of Jou's claims or to apply the facts of the case to the test in Alpha Epsilon. Jou is actually arguing that this court should have acted on the merits without jurisdiction. See Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 654 n.9 (9th Cir. 2002) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

In analyzing Jou's standing, the court applied the test set forth in Lujan, 504 U.S. 560-61, and analyzed the relevant facts. Facts that go to the merits of a structural bias claim have no bearing on standing analysis. The court's decision to omit irrelevant facts from the Order does not "induce the court to reverse its prior decision" on standing. See White, 424 F. Supp. 2d at 1274.

Moreover, in the Order, the court read Jou's claims in the light most favorable to his standing. Even then, Jou's alleged injury remained speculative. Unlike the cases Jou cites in his opposition memorandum and reconsideration motion, Jou has not been injured and cannot claim a credible threat of injury, as he has not initiated an action in state court. See Order at 7-9. Even if Jou's structural bias claims have merit, Jou lacks standing to bring them without a "concrete and particularized" injury. See Lujan, 504 U.S. at 560. Absent a particularized

injury, Jou's structural bias claim is only a generalized grievance.

IV.     CONCLUSION.

The court denies Jou's motion for reconsideration.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 28, 2006.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

**Jou v. Hawaii Judicial Selection Commission, et al., Civ. No. 06-00151 SOM/KSC; ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION.**